CHICAGO, DETROIT & CANADA GRAND TRUNK JUNCTION
RAILROAD CO. *v.* ST. CLAIR CIRCUIT JUDGE.

1. Railroads—Crossing Under Street—Erection of Bridge —
   Expense—Liability.

   Where, under section 6234, subd. 5, 2 Comp. Laws, it is the
   duty of steam railways crossing a highway to restore it to its
   former state, as near as may be, the fact that said highway is
   ·used by an interurban street railway does not affect the lia-
   bility of said steam railway to erect and maintain a bridge
   over its crossing under the highway; nor does it authorize
   imposing any portion of such expense upon the street railway.

2. Same.

   Nor does the fact that another steam road, pursuant to con-
   tract, uses the same track, affect the liability of defendant;
   since the adjustment of the equities between said companies ·
   is a matter to be undertaken by them.

3. Mandamus—Correction of Court Records—Order Nunc Pro
   Tunc.

   In mandamus proceedings to compel a railroad to erect and
   maintain a bridge over a street crossing, the irregularity, if
   .any, in placing of record on August 7th an order made June
   15th may be cured by an order nunc pro tunc.

4. Same—Railroads—Crossing Under Street.

   Where, in such proceedings, it appeared that for several years
   defendant company, after agreeing and promising to erect
   the bridge in question, delayed in making any defense to an
   order requiring such construction until it had been cited for
   contempt, it is precluded by such conduct from relief by writ
   of mandamus.

5. Same—Review—Certiorari.

   Certiorari is the proper writ to review mandamus proceedings;
   but, as the case is briefed by both parties, the court will con-
   sider the application as if properly made and dispose of the
   questions presented.

Mandamus by the Chicago, Detroit & Canada Grand
Trunk Railroad Company and the Grand Trunk Western
Railway Company to compel Harvey Tappan, circuit

judge of St. Clair county, to vacate an order directing the erection and maintenance of a bridge over a street crossing. Submitted April 6, 1909. (Calendar No. 23,131.) Writ denied May 25, 1909.

*Louis C. Stanley*, for relators.

*Joseph Walsh*, for respondent.

MONTGOMERY, J.   This is an application for a mandamus to the circuit judge requiring the vacation of an order in a mandamus proceeding instituted before him at the instance of the city of Port Huron, in which an order was entered requiring these relators to construct a bridge in Military street in Port Huron across the track of the railway occupied by the defendant the Grand Trunk Western Railway Company.   This order was entered on the 7th of August, 1908.   A motion was entered to vacate the order, and, that being denied, application was made to this court for mandamus.

The claims of the relators are: · That the order was entered at a time when the court had not the authority to enter it, the notice for the hearing having expired; that it appears by the present petition that the Pere Marquette Railroad Company is equally interested with the defendant the Grand Trunk Western Railway Company, in the occupation of this street, and therefore should share the expense of building the bridge; that the bridge when used will be made use of by an interurban railway, and that equitably that company should bear some of the expense of building the bridge; and that the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company has no connection with the railroad across the street in question.

We need not discuss this latter question, as respondent's counsel, the city attorney, is quite willing that an order be entered relieving the last-named company from the terms of the order entered by the circuit judge.

As to the contention that the interurban or street railway may pass over this bridge if completed, we think the

statute plainly imposes the duty upon the defendant railway company of restoring the street to its former state, as near as may be, upon constructing the railroad. Subdivision 5 of section 6234, 2 Comp. Laws. For all purposes of public travel, the street, after its excavation, would be open, and, as the street railway is not an additional servitude under our decisions, it would be open to that company with the assent of the city to occupy this street. If it be restored to its original state, as near as may be, by the defendant railway company, the same privilege may be granted as though the railway company had not crossed the street at all. There was no error therefore in imposing this duty upon the railway company.

The objection that the Pere Marquette Railroad Company is, by virtue of a contract between it and the defendant the Grand Trunk Western Railway Company, occupying a portion of this crossing with its tracks and trains, does not affect the right to proceed against the Grand Trunk Western Railway Company for the restoration of this street. The Pere Marquette Railroad Company is occupying this ground by virtue of an agreement between itself and the Grand Trunk Western. The adjustment of the equities between these two companies is a matter to be undertaken by them. At the least we are prepared to say that, after the course of conduct by the defendant railway company hereinafter referred to, we are not disposed to interfere at this time by the extraordinary writ of mandamus to relieve the company from a burden imposed under the circumstances of this case.

It appears that this case was adjourned from time to time; the last adjournment being about the 15th of June, 1908. At that time, as appears by the return of the court, the order in question was directed to be entered. It was not, however, placed of record until the 7th of August. If there was any error in this, it is one that may be corrected by entering an order nunc pro tunc. It is not an irregularity which should justify us in interposing with the extreme writ of mandamus.

This case presents a most unusual condition. It appears that as early as the 26th day of July, 1904, the city of Port Huron was engaged in paving Military street and in negotiations with the superintendent of the Grand Trunk Railway system with reference to the construction of this bridge over its right of way. On the 26th of July a letter was addressed to the superintendent of the department of public works suggesting that the present bridge was in such condition that it would be absolutely necessary to renew it with a modern steel bridge in 1905, and that in view of this it was unwise to incur the additional expense necessary to crib up the approaches to permit the paving to be done up to the end of the bridge, adding:

"I made a proposition to your engineer, upon which he looked with favor, and that was to have the paving stopped at the point where the cribbing now stops on the south side; the railway companies to make such repairs to the roadway between that point and the end of the bridge as are necessary to keep it in passable condition until the abutments for the new bridge are built next spring, at which time the railway company to move the planking and other material as has been used for temporary service, and the city to continue the paving up to the end of the bridge."

The city acted upon this suggestion, and on the 6th of September, 1905, the city attorney addressed a letter to the attorney of the defendant railway company stating:

"It is now three years since I met with some of your officials, and they promised to put in a new bridge; but they have put it off from time to time, although I believe they sent in some plans for a bridge. At the present time this bridge is very unsafe, and the other day when the fire team were called down that way, while going over this bridge, they went through in half a dozen places. We dislike to resort to the courts and desire to maintain amicable relations with the road, but you may readily see that it is getting to the point where we feel we are being imposed upon. Cannot you take the matter up and save further trouble?"

Again on the 3d of March, 1906, the city attorney wrote to the attorney for the railway company. On the 5th of March acknowledgment of this letter was given, with a statement that it was sent to the superintendent with recommendation.

The petition for mandamus in the circuit court was filed in the circuit court in September, 1907. The order to show cause was issued, returnable October 1st. No answer was ever put in to this petition. Upon the return day of the order to show cause, the relators filed a written motion for adjournment, "in order to give the railroad company time in which to have a conference after which proper proceedings would be taken to either settle or bring the matter to an issue." Several adjournments were taken by request of relators' counsel until October 22d. In the interim, the attorney for the relators had a conference with the officials of the city and represented to them that they were ready to enter upon the building of the bridge, but that it would require some time to get out the iron and other materials necessary to carry on the work. Under date of the 23d of October, a letter from the attorney of the railroad company to the city attorney stated that, in conference with the general transportation manager, he had received instructions to make no contest of the demands of the city if the company could obtain a reasonable time within which to do the work. Relying upon the representations, the city attorney reported the situation to the common council, and the mandamus proceedings were held open until the following spring. During the winter, in the month of February, 1908, the city attorney wrote to the relators and wanted to know if everything was going all right in the matter of building the new bridge, and asking if there was anything that would delay the matter. In reply to this, relators' attorney wrote:

"I have inquired from time to time of our officials and learned that the matter has been progressing in respect to

plans, etc. Upon learning the present situation will at once report to you."

Again on the 25th of March the attorney for relators advised the city attorney "that the general transporta-tion manager has not allowed any delay to occur in his preparation for the new bridge, and that everything is going along as fast as he can possibly push it." In May again the city attorney wrote the attorney for the relators ask-ing them to stipulate on a day for taking up the man-damus proceeding, and, receiving no satisfactory response to this, notice was duly served to take up the hearing upon the 11th day of May. It then transpired for the first time, as appeared by the correspondence, that the railway company had been in conference with the Pere Marquette Railroad Company for the purpose of getting the latter company to bear a portion of the expense. The case was adjourned from time to time, and on the 6th of June, at the request of counsel for the company, the ad-journment was had from the 8th of June to the 15th. On the 15th the case proceeded, and the order in question was directed, but, as before stated, not entered until the 7th of August. No further steps were taken by the railway company, and on the 16th of September the city filed its petition for contempt proceedings, and the order to show cause was issued. Upon the service of this or-der, the defendant came in with an application to set aside the order, denying the allegation that the bridge was worn out, etc., and setting up that the Chicago, De-troit & Canada Grand Trunk Junction Railroad Com-pany had no connection with the tracks, and averring the obligation of the Pere Marquette Railroad Company to join with the other defendant in the construction of any bridge which should be ordered.

It is hardly necessary to say of these proceedings that they are not such as to entitle the petitioner to appeal to the grace of the court. The delay has been marked by an appearance of indifference. Every opportunity for

hearing on the merits was given the present relator in the circuit, and we think the application for mandamus should be denied, with costs. As, however, the city attorney is content that such an order be made, the direction will be to vacate the order of the circuit court as to the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company, and allow it to stand in full force as to the other relator.

The proper proceeding to review mandamus proceedings is certiorari; but, as the case is briefed by both parties, we treat the case as an application for certiorari and dispose of the questions presented.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.